ARMSTRONG v. EMPLOYER'S LIABILITY ASSUR. CORPORATION, LIMITED.

[88 South. 163, No. 21379.]

1. EVIDENCE. *Evidence of nonpayment of judgment in fact admissible.*

Where a pending lawsuit is compromised for a certain amount which is paid to the plaintiffs and an order of dismissal taken in the case, which by agreement is set aside and a formal judg-

March, 1921] Armstrong *v.* Employer's Assur. Corp, 571

125 Miss.] Brief for Appellant.

ment entered reciting a trial by a jury and verdict for a certain sum, which judgment was voluntarily marked satisfied by plaintiffs, testimony is admissible to show that no loss was incurred and no money actually paid out in satisfaction of this judgment.

2. EVIDENCE. *Testimony of nonpayment of satisfaction money held not to vary court records showing satisfaction of judgment.*
   This testimony does not vary, alter, contradict, or impeach the records of the court, which records show the rendition and satisfaction of the judgment.

3. EVIDENCE. *Evidence showing no loss sustained by assured, and no money paid by him, held competent in suit on indemnity policy.*
   Where a party has compromised a suit against him, and paid to the plaintiffs the sum of three thousand five hundred dollars in full settlement therefor, and had the suit dismissed, and subsequently, at the request of the insurance company, which has agreed to pay any loss by reason of liability imposed by law upon the assured (the plaintiff) for damages on account of personal injuries, and upon the request of the insurance company the order of dismissal is set aside and a judgment entered, reciting a trial by jury and a verdict in plaintiff's favor for this amount, which judgment is marked satisfied by the plaintiffs, under this insurance agreement it is competent for the insurance company to prove that no loss was sustained by the assured, and no money was paid out by him in satisfaction of the judgment, but that the amount was actually paid before the judgment was entered. This testimony in no wise impeaches the records of the court showing the entry and satisfaction of the judgment.

APPEAL from circuit court of Hinds county.
HON. W. H. POTTER, Judge.

Action by John W. Armstrong against the Employer's Liability Assurance Corporation, Limited. Judgment for defendant, and plaintiff appeals. Affirmed.

*J. N. Flowers, Ellis B. Cooper* and *L. K. Ramsey,* for appellant.

Appellant files his suit and says that there has been imposed upon him by law the expenditure of three thousand five hundred eighteen dollars and seventy cents by reason of his having struck with his automobile the person of

one James Kelly. How is this evidenced? It is evidenced by the record in the case of *Kelly* v. *Armstrong.*

But appellee says that the judgment in this case does not show the true facts. The judgment actually entered shows a trial and shows a verdict. If this were true appellee must admit that it is liable. But appellee offers evidence to show that what the record says is not true. Appellee did offer evidence to show that what the record shows was not true and the court below overruled the objection. So, therefore, the first inquiry will necessarily be as to whether such testimony is competent.

This court in the case of *Sadler* v. *Prairie Lodge,* 59 Miss. 572, has this to say: "Such a recital as this in the judgment or decree of a domestic court of general jurisdiction cannot be contradicted or questioned in a collateral proceeding." *Coocks* v. *Simmons,* 57 Miss. 183; Freeman on Judgments (3 Ed.), section 131, and authorities cited. "So long as such a judgment remains unreversed and unassailed by some direct attack brought for the purpose of reversing or annulling it, its recitals must be respected in all collateral matters, and in all proceedings necessary for carrying out and executing it, but it may always be shown to be false by direct attack——."

In the case of *Murrah* v. *State,* 51 Miss. 652, it was contended on a writ of *habeas corpus* that the conviction of the appellant was improper and that the judgment was fraudulent and void and that there was no trial by jury as alleged. The judgment recited that a jury had tried the appellant but he attempted to show by parol that this was untrue. The lower court denied this contention and the appeal followed. This court said therein: "That the record imports absolute verity is a rule too well established in reason and by adjudication to be now questioned. If the impeachment of a record by parol evidence were to be permitted in a single instance, the value of records would be entirely destroyed." "No rule of law is older than the one indicated. Its antiquity is beyond ordinary research."

In the case of *Childress* v. *Carley,* 92 Miss. 571, 46 So. 164, this court further said: "The record being the sole embodiment of the judicial proceedings, no other materials or utterances, oral or written, can be set up in competition with it. In other words, but less correctly, the record is conclusive." This case was approved in *Stevenson* v. *McLeod,* 81 So. 788.

And, then again, in the case of *Mandeville* v. *Stockett,* 28 Miss. 398, this court said: "The record must be tried by itself. It imports absolute verity; and if the defendants desire to controvert it they must rely alone upon the record for that purpose, and introduce as their evidence, a transcript of the entire record of the judgment as entered in court, or by the court directed to be entered. The question then would be tried by comparison of the two transcripts, and not by an isolated entry of an order in the cause, or by parol evidence, as attempted by the defendants by introducing the deposition of the clerk of court." See, also, *Shirley* v. *Fearne,* 33 Miss. 653.

So we have the well-settled proposition, to vary, alter or contradict a record is not permissible. It is not permissible to vary, alter or contradict the terms of a contract which is in writing. This is based upon the soundest public policy, but the rule as to judgments is founded not only on this policy but on another just as far reaching.

Now, under the terms of the policy it was incumbent on this appellant to show that the sum sued for was in satisfaction of a liability imposed by law.

*Marshall & Wallace,* for appellee.

The policy of indemnity insurance being plain and unambiguous in its terms, is construed like any other contract and constituted the law governing the mutual rights and obligations of the appellant and the appellee growing out of the accidental killing of the aged veteran by the appellant's automobile. As said, this court in the case of *Penn. Mutual Life Insurance Company* v. *Carrie B. Gor-*

*don,* 104 Miss. 270, 61 So. 311: "What is a policy of insurance? It is the instrument setting forth the contract of insurance. It is the evidence of the agreement between the insurer and the insured. Its purpose is to show the considerations, the terms, the contract of indemnity, the privileges, the benefits, and the conditions. The usual rules for construing contracts should be applied in considering contracts of insurance."

That these policy provisions, stipulations and conditions accorded the appellee the absolute right to control the question of compromise of a claim against the appellant, and not to be .bound by any compromise made by the appellant save upon such conditions as the appellee might impose, is settled by all authorities, and in all jurisdictions in which the question has been raised and determined. *Schmidt & Sons Brewing Company* v. *Travellers Insurance Company,* 244 Pa. 286, 90 Atl. 653; *Rumford Falls Paper Company* v. *Fidelity & Casualty Company,* 92 Me. 574, 43 Atl. 503; *London Guaranty & Accident Company* v. *Illinois Central Railroad Company,* 97 Miss. 165, 52 So. 787; *St. Louis Dressed Beef Company* v. *Maryland Casualty Company,* 201 U. S. 172; *Butler Brothers* v. *American Fidelity & Casualty Company,* 120 Minn. 157, 139 N. W. 355.

That the power of an agent, whether he be an attorney or other class of agent, rests solely upon the authority conferred upon him by his principal is equally well established. And when one dealing with the agent has notice (as in this case) of the limitation of the agent's authority to bind the. principal, no individual actions or statements of the agent can estop or bind the principal, because then there is no apparent authority even. *Cape County Saving .Bank, et al* v. *Gwin Lewis Grocery Company et al.* (Miss.), 86 So. 275; *Dahnke-Walker Milling Company* v. *T. J. Phillips* (Miss.), 117 Miss. 204, 78 So. 6; *London Guaranty & Accident Company* v. *Illinois Central Railroad Company,* 97 Miss. 165, 52 So. 787. And an agent may testify (as in this case) to the limit and scope of his au-

thority. *Riechman-Crosby Company* v. *Dinwiddie*, 117
Miss. 103, 77 So. 533, 906.

As to appellant's proposition that the entry of the jury
and verdict form of judgment estops the appellee from
showing the facts and circumstances of the settlement.
As is the case with virtually every proposition that has
no moral basis, there are many vulnerable phases to this
proposition that, we take it, need only be stated, and need
no argument in support of their existence.

In the first place, the contract between the appellant
and the appellee required the appellee to indemnify ap-
pellant against such loss as he might suffer under a claim
for damages by reason of the operation of appellant's auto-
mobile, provided the appellant did not, without appellee's
consent, voluntarily assume or agree to the loss by way of
compromise of the claim. Appellant did voluntarily, with-
out the appellee's consent save upon condition that appel-
lee should disburse only three thousand dollars, assume
such loss by compromise, and paid the amount, of the loss
under the compromise and not under the judgment which
was meant only as a form of record receipt, entered, as
appellant expressly agrees, sixteen days after appellant
had paid out the money under the compromise and not
under the judgment. In this unquestionably sound view
of the case, there is no attack directly or indirectly upon
the judgment in the form of a jury and verdict. Insofar
as that judgment may be concerned, the appellant could
maintain no action at all against the appellee; for having
paid out nothing under the judgment as he himself ad-
mits, he sustained no loss by reason of it, and, therefore,
could obtain no indemnification by reason of it. The un-
contradicted proof in the record shows that the appellant
suffered no loss by reason of the judgment (and loss is
the criterion of indemnification) but purely by reason of
the unauthorized compromise.

Since the matter is made one purely of evidence by the
appellant in his brief, we call the court's attention to the
fact his position would be the same had a mere written in-

strument reciting a consideration of thirty-five hundred dollars for an accord and satisfaction been drawn and executed between the appellant and the heirs of Mr. Kelly. The rule is the same. You cannot vary the terms of a written instrument by parol. And, so, would argue the appellant with equal cogency, the appellee could not show that its agreement was to pay only a part of the consideration, because the agreement was previous to the execution of the instrument, and appellant's case could not be inquired into beyond the four corners of the instrument. This, of course, is neither sense, nor law, nor justice. Yet it is the substance of appellant's position here which he contends, is purely a question of technical evidence.

Again, and from another proper viewpoint, there is no attack upon the judgment here. The judgment could have been for no more and no less than thirty-five hundred dol- sixteen days after the money was paid. Hence, the judg- lars, because it was based upon the amount of the unauthorized compromise, and was entered as a matter of form ment was due to the fact that the appellant took the conduct of the Kelly case from the appellee in violation of the policy provisions. If the case were rested purely upon the judgment, and appellant "given a dose of his own medicine," the appellant would not be entitled to recover anything in this cause. But the appellee, less willing than the appellant to resort to technicality in an effort to defeat justice, is willing to treat the case fairly as it did in the court below, and to regard it as though it relinquished control of the litigation in Lincoln county upon condition that its liability should not exceed three thousand dollars. There was purely and simply a novation of the contract of indemnity insurance, based upon a consideration universally recognized as valid, and appellant is merely unable to distinguish between an attack upon a judgment and extrinsic proof as to the amount that appellee had agreed to disburse in satisfaction of a claim on account of which the judgment happened to be entered, but was not based. We submit that we have not attacked this judgment taken, as

shown by the uncontradicted proof, as a mere record satisfaction of a claim, but have proven in defense (it is agreed in the record that such was the case) that appellee's contract with appellant was to pay only three thousand dollars towards settlement of the claim of the heirs of the confederate veteran slain by appellant's automobile.

Further, while we do not attack this judgment, in answer to the appellant's shout of record verity (?) we say that an universal exception to the rule is that the doctrine can never be relied upon by a party to a cause when its invocation would operate to effectuate a fraud. And who would say, after reading the appellant's agreement of facts, the letters, and other testimony embodied in the transcript of the record, that a substantial injustice and grossly unfair advantage would not be taken of the appellee by the appellant if the appellant's position should be sustained.

Confidently believing that no cause not based upon law and substantial honesty can prevail in this court, we beg to rest this case here, and respectfully ask that the judgment of Judge POTTER rendered in the trial of the cause below be affirmed.

SYKES, J., delivered the opinion of the court.

The appellant sued the appellee company in the circuit court for three thousand five hundred dollars, based upon an indemnity insurance policy for the amount of a judgment rendered against appellant because of the accidental striking and killing of a man by the name of Kelly by appellant's automobile while driven by a young lady. The sad accident occurred in the city of Brookhaven. At the time of this accident the appellant had an insurance policy with the appellee company. Agreement No. 1 in this policy is as follows:

"To pay any loss by reason of the liability imposed by law upon the assured for damages on account of bodily injuries, including death at any time resulting therefrom,

accidently sustained during the policy period by any person or persons, other than employees engaged in operating or caring for the automobiles covered, as the result of the ownership, maintenance or use of any of the automobiles enumerated and described in item 8 of the Declarations."

The appellee's limit of liability for one person injured under this policy was five thousand dollars. Conditions C and D of the policy are as follows:

"C. Upon the occurrence of an accident covered by this policy, the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the corporation's home office at Boston, Mass., or to the corporation's authorized agent. If a claim is made on account of such accident the assured shall give like notice thereof with full particulars. The assured shall at all times render to the corporation all co-operation and assistance in his power.

"D. If thereafter any suit, even if groundless, is brought against the assured to enforce a claim for damages on account of an accident covered by this policy, the assured shall immediately forward to the corporation every summons or other process as soon as the same shall have been served on him, and the corporation will, at its own cost, and subject to the limitations referred to in condition A hereof defend or at its option settle such suit in the name and on behalf of the assured."

These are the agreements material for a decision of this case.

It is unnecessary to set out in detail the pleadings. The testimony in the case is practically undisputed. Briefly stated, this testimony is as follows: That immediately after the killing of Mr. Kelly, Mr. Armstrong notified the insurance company of the accident, and the insurance company made investigation of the facts. Shortly thereafter suit was filed by the Kelly heirs against Mr. Armstrong and the young lady for forty thousand dollars. The insurance company was at once notified of this suit, and its

attorney, Mr. Marshall, took active charge of the defense.
Mr. Armstrong and the young lady each employed coun-
sel to assist in the defense, all of which was agreeable to
the insurance company. Before the case came on for trial
in the circuit court of Lincoln county, the question of a
compromise was discussed by the attorneys of the insur-
ance company, Mr. Armstrong, and the young lady. The
attorney of the insurance company ascertained from the
company that it would be willing to pay two thousand
five hundred dollars in compromise of the case, and this
fact was communicated to Mr. Armstrong's attorney. Later
on, through its attorney, the insurance company agreed to
pay three thousand dollars as its part of a settlement. In
these conferences it was stated by the attorney of the in-
surance company that he had no authority from the com-
pany to offer any amount over the sum of three thousand
dollars. The suit was pending at Brookhaven, in Lincoln
county. The attorney of the young lady lived there, the
attorney of Mr. Armstrong lived in Jackson, and the at-
torney for the insurance company lived in Bay St. Louis.
It was understood that neither the insurance company's
attorney nor Mr. Armstrong's attorney would come to
Brookhaven until notified by the attorney of the young
lady.

Shortly after the convening of the circuit court at Brook-
haven the question of compromise came up between the at-
torney of the young lady and the attorney of the Kelly
representatives, various proposals and counter proposals
being suggested. These proposals were communicated to
Mr. Armstrong's attorney in Jackson. This attorney got
in touch with the attorney of the insurance company at
Bay St. Louis, and asked him if the appellee company
would not increase its offer of compromise to three thou-
sand five hundred dollars; that there was a probability of
being able to settle the case for this amount. The attorney
for the insurance company at once attempted to get in
touch with the proper officer of the company to see whether
or not the company would increase its offer of settlement.

He failed, however, to do so, and promptly notified Mr. Armstrong's attorney at Jackson to this effect, and that he was only authorized to offer for the company three thousand dollars in compromise. The attorneys for the Kelly heirs finally agreed to settle the case for three thousand five hundred dollars, provided this amount was paid at once, and Mr. Armstrong and his attorney were notified of this fact by the Brookhaven attorney, and Mr. Armstrong promptly sent his check for three thousand five hundred in settlement of the claim. At the time this was done Mr. Armstrong and his attorney both knew that the insurance company had only offered to pay three thousand dollars as its part of the compromise. Releases were taken from the Kelly heirs when this amount was paid them, and their suit was marked dismissed upon the dockets of the court. The fact of the settlement for three thousand five hundred dollars was then communicated to the attorney of the insurance company, and he was informed that the suit had been dismissed, but that in case he preferred any other order to be entered in the case, the Brookhaven attorney courteously offered to see that it was done. The attorney of the insurance company then prepared a formal judgment to be entered in the case. This judgment recited a trial by jury, and a verdict in favor of the plaintiffs for three thousand five hundred dollars. Copies of this judgment were mailed to the Brookhaven attorney and to Mr. Armstrong's attorney in Jackson, and the judgment was duly entered on the records of the circuit court of Lincoln county, the order of dismissal having previously thereto been set aside. This judgment was entered several days before that term of the circuit court adjourned. After the adjournment of the court, the insurance company through its attorney offered to pay the three thousand dollars as its share of the amount for which the case was settled. Mr. Armstrong declined to accept this amount, claiming that under the policy the insurance company should pay the whole amount of the judgment, namely three thousand five hundred dollars, together with all costs. This the in-

surance company declined to do, claiming that it was only liable for three thousand dollars. Before the adjournment of the circuit court of Lincoln county this judgment for three thousand five hundred dollars was marked satisfied by the Kelly heirs.

It is the contention of the appellant in this case that all of the testimony relating to agreements of settlement, the settlement itself, and the amount that the insurance company offered to pay as its part of this settlement was inadmissible, because its effect was to impeach the verity of the judgment of the circuit court of Lincoln county in this case; that the insurance company was actively in defense of this suit, wrote the judgment in the case; consequently is a privy to the judgment and is bound thereby; that this judgment recites a trial by a jury and the rendition of a verdict for three thousand five hundred dollars in favor of the plaintiffs; that under its policy of insurance (agreement No. 1) the insurance company agrees "to pay any loss by reason of the liability imposed by law upon the assured for damages on account of personal injuries;" and that the satisfied judgment is the best and only evidence of the loss sustained by the assured. The authorities relied upon by the appellant to the effect that this judgment imputes verity, and cannot be attacked or impeached, in this proceeding, except for fraud, are universally recognized in this state. The appellee is not attempting to impeach this judgment in this case. The testimony shows that the appellant did not sustain any loss because of this judgment, because he did not pay out any money by virtue of the rendition of the judgment. The money paid out by him, or the loss sustained by him, was paid out, or incurred, before the rendition of the judgment. Because of the payment of this money before the rendition of the judgment the judgment was voluntarily satisfied by the plaintiffs. The judgment itself is not impeached nor attacked by showing that the loss incurred by the appellant under agreement No. 1 of this policy was incurred before the rendition of the judgment. At the time the appellant paid

out this money he understood that the insurance company was only willing to contribute three thousand dollars of this amount; consequently he cannot recover the overplus paid out by him.

There was a peremptory instruction in appellant's favor for three thousand dollars, together with the costs of the circuit court of Lincoln county, and the judgment is affirmed.

*Affirmed.*